The State *v.* Campbell.

THE STATE *ex rel.* JAS. P. JOHNSON *v.* E. B. CAMPBELL.

CLERK COUNTY COURT. The power to fill a vacancy in the office of county court clerk belongs to the justices of the county, and not to the county judge.

FROM WILLIAMSON.

Appeal in error from the Circuit Court of Williamson county. W. S. McLEMORE, J.

E. H. EAST, ATHA THOMAS and J. P. JOHNSON for Johnson.

CAMPBELL & SON and J. B. CAMPBEL for Campbell.

McFARLAND, J., delivered the opinion of the court.

The controversy in this case is, whether the county judge of Williamson county or the quarterly court, composed of the justices, has the right to fill a vacancy in the county clerkship occasioned by the resignation of the regular incumbent.

The defendant Campbell was appointed by the county judge to fill the vacancy, and inducted into the office; subsequently, the relator Johnson was appointed or elected by the justices at an adjourned meeting of the quarterly term, but the defendant refusing to surrender the office, this proceeding was instituted in the circuit court of the county under the provisions of the chapter of the Code beginning with section 3409.

The bill was in the first instance in the name of the relator Johnson. A demurrer was filed upon the ground that the proceeding could only be instituted in the name of the State by the attorney general. After argument, but before action upon the demurrer, an amendment was allowed, changing the bill so as to make it a proceeding in the name of the State by the district attorney general, upon the information of James P. Johnson, and the bill was signed by said district attorney. The demurrer was thereupon overruled, and the defendant required to plead or answer, and he answered accordingly. The defendant would no doubt have had the right to demur to the bill as amended, but it does not appear that he offered to do so, if indeed he had any ground for doing so as to the mere form of the remedy. It was held in the case of the *State ex rel.* v. *McConnell,* 3 Lea, 333, that such bill must be filed by the attorney general, or at least that its filing must be assented to by him.

It is now argued that the bill can only be filed by the district attorney upon the direction of the Legislature, or of the Governor and attorney general for the State. Sections 3412 and 3413 provide: "That the suit is brought by the attorney general for the district or county, when so directed by the general assembly, or by the Governor and attorney general of the State concurring." Sec. 3413: "It *is also brought* on the information of any person, upon such person giving security for costs of the proceedings, to be approved by the clerk of the court in which the bill is filed."

Reading these two sections together and giving effect to both, the fair construction is, that the proceeding may be instituted by the attorney general for the district or county, upon the information of any person who will give security for costs; and when brought upon such information and security for costs, the direction of the general assembly, or Governor and attorney general for the State is not required. The bill may be filed either upon the direction of the general assembly, Governor and attorney general without security for costs; or upon information and security for costs, without more.

Nor are we inclined to think that leave of the court was necessary to file the bill. The chapter of the Code prescribes this as a remedy, where, among other things, any person unlawfully holds or exercises a public office; and by secs. 3419 and 3420, it is provided in substance that the rights of the person really entitled to the office may be set up in the bill and adjudged on the hearing of the cause, so that in reality it is a mode by which the right to the office may be determined, and the contest between different claimants adjudged, if the attorney general for the district or county chooses to allow the proceeding to be instituted by his authority. It is styled by sec. 3411, "a bill in equity," and the chapter has no provisions requiring leave of the court to be first had. While it was intended as a substitute for the obsolete writ of *quo warranto,* or information in the nature thereof, yet the entire proceeding is regulated by the chapter referred to. The filing of the bill by the

attorney general for the district upon information, seems to be a matter of right.    At all events, the chapter being silent as to the necessity of obtaining leave of the court, we cannot add this as an additional requirement.    But this objection was not made in the court below—if so, it might have been obviated.    The question was, therefore, not properly raised: 3 Lea, 340.

This brings us to the merits of the controversy, that is to say, whether the power to fill the vacancy belongs to the county judge or the quarterly court, composed of the justices.    The very elaborate and carefully prepared arguments of counsel have furnished plausible reasons to support a decision either way. The county court of pleas and quarter sessions, composed of the justices of the county, was established in North Carolina before the formation of the State of Tennessee, and was regarded as one of the established courts when the government of this State was organized, and so continued until the adoption of the constitution of 1834.    Previous thereto the Legislature had, from time to time, reduced the number of justices required to hold for some purposes, but the organization of the court and its general jurisdiction remained the same.    After the adoption of the constitution of 1834, which left the establishment of inferior courts to the Legislature, by the acts of 1835, the judicial system was reorganized, and by chapter 6, this court was re-established under the name of the "county court," to be composed as before of the justices of the county.    All jurisdiction, however, over jury trials—which it formerly had—was taken away

and this court has ever since been in existence and known as the county court, composed of the justices: Code, sec. 4179.

By the act of 1837–8, amending the act of 1835, provision was made by which all except the quarterly terms of the courts might be held by three of the justices to be selected for that purpose, styled the quorum court; and afterwards the judicial powers of the court to a great extent, as they were increased from time to time, were vested in this quorum court: Code, secs. 4201–2–3. The court, however, remained the same, the only difference being that for certain purposes only three justices were required to be present. The quarterly terms were still held by all the justices or a majority.

The act of 1858, creating county judges for certain counties, Williamson among others, transfers to the county judge, who is to hold the monthly courts, the powers and jurisdiction of the quorum court, and provides that "The county clerk shall be the clerk of the county court to be held by the county judge": Code, sec. 4199. It is conceded that the power to fill the vacancy is vested in the court, but the question is whether it is the quarterly court held by the justices, or the monthly term by the county judge.

The second clause of art. 7 of the constitution of 1870, which is identical in this respect with the constitution of 1834, is in these words: "Should a vacancy occur subsequent to an election in the office of sheriff, trustee or register, it shall be filled by the justices; if in that of clerk to be elected by the

people, it shall be filled by the court; and the person so appointed shall continue in office until his successor shall be elected and qualified, and such office shall be filled by the qualified voters at the first election of any of the county officers."

The question is, the meaning of the language, " that if a vacancy occur in the office of clerk to be elected by the people, it shall be filled by the court." Clerks of the county court are elected by the people, under a previous article of the constitution, and therefore the clause quoted includes county clerks. But inasmuch as the court is sometimes composed of the justices and sometimes of the judge, the question is which shall exercise this particular power.

The constitution only provides the general rule, that is to say, the vacancy shall be filled by the court; but as the county court was one of the inferior courts which the Legislature might ordain and establish, it results that the Legislature might change the constituents of the court and regulate or change its jurisdiction, or in other words, might provide as it did do, that for some purposes all or a majority of the justices should be present, for other purposes three were sufficient, and finally that the powers and jurisdiction formerly exercised by the three justices should be transferred to the county judge. In other words, while the Legislature could not change the general rule of the constitution, " that the vacancy should be filled by the court," it might, nevertheless, say who should constitute the court for one purpose and who for another. This principle is settled in the case of the *State* v.

*Turk,* decided in 1827, Martin & Yerger, 287. The constitution of 1796 had this clause: "Each court may appoint its own clerk, who may hold his office during good behavior." The Legislature in the same year passed an act, that where any vacancy occurred to be filled by the county court, the court should hold an open free election, and public notice should· be given. In the case referred to, this was held to apply to vacancies in the office of county clerk, and further, that the constitution only provided the general rule, "that the clerks were to be appointed by the court," and that it was competent for the Legislature to regulate the mode of exercising the power, and that in exercising the power of appointment given by the constitution, the Legislature had required that the court should hold an election and give the public notice.

The clause of the constitutions of 1834 and 1870, in regard to filling the vacancy, is similar to the clause of the constitution of 1796, in regard to filling the office by appointment in the first instance. So that it was competent for the Legislature, either under the constitution of 1834 or 1870, to provide that this power of filling the vacancy, conferred by the constitution upon the *court,* should be exercised in any mode the law-making power might deem proper, or that for the exercise of this power all the justices should be present, or any given number, or that the power might be exercised by the judge.

The case then turns upon the construction of the several acts of the Legislature indicating the legislative intent upon this question. We have seen that the

The State *v.* Campbell.

act of 1796, requiring that in the filling of vacancies by the county court, an open free election should be held by the justices upon public written notice, was held to apply to a vacancy in the office of county judge. We find the substance of this act brought into the Code under the head of elections by the county court, at sec. 819, in these words: "When an officer is to be elected *or a vacancy filled,* it is the duty of the court to hold an open free election on the first day of the term, admitting all citizens as candidates, except such as are prohibited by the constitution and laws." Section 821 provides for public notice. An election by the county court implies, of course, an election by the justices. It will be observed that this section relates not only to officers to be elected, but *to vacancies to be filled,* and is certainly broad and general enough in its language to include any vacancy to be filled by the county court. And as it is conceded that a vacancy in the office of clerk is to be filled by the county court, it would seem to logically follow that this sec. 819 applies as well to a vacancy in the clerkship as any other. The only difficulty arises from the fact that the preceding section (818) undertakes to enumerate the vacancies to be filled by the county court, and mentions only those of sheriff, trustee and register, and makes no reference to the clerkship. Of course if there was nothing else, it might be held, as has been plausibly argued, that sec. 819 relates only to the manner of making appointments and filling the vacancies specified in the preceding sections. But it will be remembered that the

Code was made up mainly by compiling and re-arranging previous statutes, and often different sections of the same original statute were widely separated and placed in the new arrangement under different heads, and the compilers only simply omitted to embrace in sec. 818 all the vacancies to be filled by the county court. This, however, is found elsewhere, and the clause of the constitution we have heretofore quoted, as well as sec. 325 of the Code, plainly declare that vacancies in clerkships are to be filled by the court, and hence such vacancies come within the very letter of sec. 819. In fact, the vacancy in the office of county court clerk comes more directly within the letter of the constitution as to vacancies to be filled by the *court,* than vacancies in the offices of sheriff, trustee and register; the language of the constitution is, that should a vacancy occur in either of these offices, it is to be filled by *the justices.* This, under the legislative construction and the uniform practice, means the justices in county court assembled; but as to the clerk there is no room for construction, the positive language is that the vacancy is to be filled *by the court.*

But if the question were otherwise doubtful, the fact that the act of 1796, from which sec. 819 was taken, was directly held to apply to a vacancy in the office of county court clerk, would seem to be conclusive. It is true this was previous to the constitution of 1834, and if the Legislature had at any time subsequently provided that the appointment to fill a vacant clerkship should be otherwise exercised, the argument would be destroyed, but not having

done so, it seems to us to lead to the conclusion indicated.

Furthermore, the third section of the act of 1875, ch. 43, is to the same effect. This is "an act to lessen the number of justices composing the quarterly courts," and the first and second sections relate to that subject. The third section is as follows: " That should any office be required to be filled, *or vacancy occur in any office required to be filled by the county court*, it shall be the duty of the clerk, or if there be no clerk his deputy, and if there be no clerk or deputy, the acting chairman, to give at least ten days' notice to every justice of the peace of his county, to assemble at the court-house of the county, in order to fill such vacancy; and in filling such vacancies all the justices of the county shall be entitled to attend and draw pay, but shall not draw pay for more than one day, and a majority of the justices of the county shall be necessary to constitute a quorum."

The language of this section applies to *any vacancy* to be filled by the county court, and as this includes a vacant clerkship, *and especially as the mode of filling a vacant clerkship is not otherwise provided for*, we see no reason why this act should be held not to apply to the mode of filling a vacant clerkship. This is further strengthened by the circumstance that the act refers to cases where there may be neither clerk or deputy clerk, and naturally the inference would be that in such case the vacancy in that office would be the one to be filled. We may add, if this were a question of doubt, the power should be held to belong to the justices,

where it was certainly originally lodged, rather than to the one man.

This was the conclusion of the circuit judge, and his decree will be affirmed.