Johnson v. Brice.

RUSS M. JOHNSON *v.* ROBERT BRICE

and

W. R. COOPER *v.* JOHN E. MCMILLAN.

(*Knoxville.*     September Term, 1903.)

1. **QUARTERLY COUNTY COURT.** Jurisdiction of.

An accurate statement of the general scope of the duties de-
volved by law upon the quarterly county court is given by the
court, with citations of the statutes contained in the Code
from which such statements are drawn. (*Post, pp.* 63-66.)

Code cited and construed: Secs. 5992, 5993, 5997-5999, 6003,
6012, 6015-6017, 6019, 6041-6046, 500, 504, 506-510, 6038, 1617-1647,
6048-6055, 2703, 2704 (S.); secs. 4954, 4955, 4959, 4967, 4968, 4970-
4972, 4974, 4985-4988, 466, 470, 472-476, 4985, 1322, 1385, 1338-1345,
1354- 1356, 4989, 4990, 2126, 2127 (M. & V.); secs. 4188, 4193,
4195, 4190, 4211-4216, 408, 412, 414-418, 4207, 1182, 1193a, 1619,
1620 (T. & S. and 1858).

2. **MONTHLY COUNTY COURT.** Jurisdiction of.

An accurate view of the scope of the jurisdiction of the county
judge or chairman of the county court holding the monthly
county court is given by the court with citations of statutes
contained in the Code from which such views are drawn. (*Post,*
*pp.* 67, 68.)

Code cited and construed: Secs. 6006, 6022, 6023, 6025, 6027, 6029,
6031-6037 (S.); secs. 4962, 4977, 4984 (M. & V.); secs. 4197-4199,
4201, 4202-4205 (T. & S. and 1858).

3. **QUARTERLY AND MONTHLY COUNTY COURTS.** Juris-
diction of quarterly court is legislative, while that of monthly
court is judicial.

The statutes setting forth, respectively and in general, the juris-
diction of the quarterly county court and that of the monthly
county court, show in clear outline the diverse nature of the

Johnson v. Brice.

two jurisdictions. The duties devolved upon the quarterly county court are essentially legislative, while the jurisdiction conferred upon the monthly county court is wholly judicial. (*Post, pp.* 68-70.)

4. **COUNTY JUDGE OR CHAIRMAN.** Vested with all jurisdictions of county court except that expressly conferred upon quarterly court.

The county judge or chairman holding the monthly county court has all the jurisdiction belonging to the county court except that which is specially required to be done by the quarterly court, or except such as expressly or by reasonable implication devolves upon the quarterly court. (*Post, p.* 68.)

Code cited and construed: Secs. 511, 5993 (S.); secs. 477, 4955 (M. & V.); secs. 419, 4181 (T. & S. and 1858).

5. **CONTESTED ELECTION.** Jurisdiction in court having power to induct officer.

Where no other provision is made for the contest of an election, the court that has the power to induct into office has the jurisdiction to dispose of the contest. (*Post, p.* 71.)

6. **SAME.** Same. Offices of county register and county court clerk.

Jurisdiction of contested election cases over the offices of county register and county court clerk is in the monthly county court to be held by the county judge or chairman, and is not in the quarterly county court. (*Post, pp.* 63-72.)

Code cited and construed: Secs, 402, 408, 511, 559, 561, 1154, 1155, 5993 (S.); secs. 368, 374, 521, 523, 1020, 1021, 4955 (M. & V.); secs. 326, 332, 447, 449, 825 f, 825 g, 4181 (T. & S. and 1858).

Case cited and distinguished: Leonard v. Haynes, 14 Lea, 447.

7. **SAME.** Office of county superintendent of public instruction.

Jurisdiction of a contested election case over the office of county superintendent of public instruction is in the quarterly county

Johnson v. Brice.

court electing such officer, and is not in the monthly county court.  (*Post, pp.* 72, 73.)

Case cited and approved:   Leonard v. Haynes, 14 Lea, 447.

8. SAME.  Properly certified to circuit court by county judge, when.

Where the county judge, because of interest, is incompetent to hear and determine a case upon its merits—e. g., a contest over the office of county register or clerk of the county court—it is proper for him to certify the case to the circuit court.  (*Post, p.* 73.)

Code cited and construed:   Sec. 5723 (S.); sec. 4688 (M. & V.); sec. 3926 (T. & S. and 1858).

9. SAME.  No purging of polls under bills showing void election.

Under a bill bottomed alone upon the assertion of title to an office under an election and containing allegations, which upon demurrer are to be taken as true, showing a violation of all the safeguards which the law has thrown around elections, so that the results rendered are incurably uncertain, there can be no purging of the polls and no relief can be granted except to declare the whole election void.  (*Post, pp.* 74-76.)

10. SAME.  Essential allegations of a bill to recover an office.  Contestants' plendings fatally defective.  Case in judgment.

All contestants seeking to recover an office must show the validity of the election and that they were deprived of a sufficient number of votes at the several polling places to be specified to change the result of the election.  The bills in these causes are fatally defective, in that, assuming the validity of the election, they do not set out with that certainty required by law that either of the contestants were deprived of a sufficient number of votes to have changed the result of the election.  (*Post, p.* 76.)

11. **PLEADING AND PRACTICE.** Court will not seek out irrelevant matters not pointed out.

The court is not required to go through the pleadings and pick out irrelevant matters appearing therein, in the absence of a motion pointing out the objectionable matters with reasonable accuracy. (*Post, p.* 74.)

12. **OFFICE.** Bill asserting title to, but showing void election, dismissed upon demurrer.

A bill or petition filed for the sole purpose of asserting title to an office, and to recover same, in which facts are stated showing the whole election to be void, and that no one could have title to an office thereunder, must be dismissed upon demurrer thereto. (*Post, pp.* 74-76.)

Case cited and approved: Nelson v. Sneed, 4 Cates, 36, 40-46.

Case cited and distinguished: Maloney v. Collier, 4 Cates, 78.

---

FROM KNOX.

---

Appeal from the Circuit Court of Knox County.—W. L. WELCKER, Special Judge.

PICKLE & TURNER and H. T. COOPER, for Johnson and Cooper.

JEROME TEMPLETON, J. W. CALDWELL, SAMUEL G. SHIELDS, HORACE VANDEVENTER, and CHARLES T. CATES, JR., for Brice and McMillan.

---

MR. JUSTICE NEIL delivered the opinion of the Court.

Johnson v. Brice.

These are contested election cases, and as they involve in substance, the same matters, they are disposed of in one opinion.

In the first-mentioned case, Johnson and Brice were opposing candidates for the office of county register. The latter received the larger number of votes on the face of the returns, was declared elected, and received the certificate. Thereupon the former instituted a contest.

In the second case the parties were opposing candidates for the office of county court clerk. McMillan received the larger number of votes on the face of the returns, and the certificate of election. Thereupon Mr. Cooper instituted a contest.

Both contests were instituted in the county court. When the cases were first brought up for consideration in the county court, the point was made by the contestants in each of them that it should be tried before the quarterly county court. The contestees insisted, on the contrary, that the cases were properly triable before the county judge, and the latter so held.

He thereupon certified his incompetency because of interest, and the cases were transferred to the circuit court. There they were disposed of adversely to the contestants, and have been brought by appeal to this court.

It is insisted by the contestants that the cases should be remanded to the county court for trial. The settlement of this question depends upon whether the origi-

nal jurisdiction was in the quarterly court or in the county judge.

The solution of this question depends upon an examination and comparison of certain sections of the Code.

The references we shall make are to Shannon's Code.

Section 5992 reads: "The county court consists of the justices of the county. It is divided into a quarterly and monthly court, the first being held by all or such number of the justices necessary to transact business, the latter by the chairman or judge of the county court." . . .

The quarterly court is required to meet in quarterly sessions, to be held on the first Mondays of January, April, July, and October of each year. Section 5993. It may be called in special session at other times, whenever the chairman or county judge deems that the public interest requires it, or upon application of any five justices who are members of said court. Section 5997. This call must be made by publication and must specify the business to be done, and no other business but that embraced in the call can be transacted at such special session. Section 5998. If there be no newspaper published in the county, the justices may be notified by personal service; such notice to contain the purpose for which the court is convened. Section 5999. All of the justices are required to attend court—that is, the usual quarterly term as well as special sessions—and are allowed to draw pay at the rate of $1.50 a day, and also mileage. Should any office be required to be filled, or

vacancy occur in any office required to be filled, by the county court, the clerk, his deputy, or the chairman, must give each justice of the peace ten days' notice of the meeting called to dispose of such matter. Section 6003. At the first term in every year of the quarterly court, that body, except in counties where a county judge is provided for, must elect a chairman, to hold office for one year, and to preside over the deliberations of that body, and to perform such other duties as are now or may be assigned to him by law. While presiding over the quarterly court, all business for the action of that body must be presented to the chairman or county judge, who shall announce the same to the court and take the vote thereon; and no business can be otherwise transacted except by consent of a majority of the justices present. Section 6012.

The quarterly court is charged with the duty of imposing taxes for county purposes, and providing for the collection thereof. Sections 6013, 6019, and 6041. That body has the power of electing certain county officers. It makes appropriations of moneys for public purposes from the county treasury. Sections 6015-6017, 6045, subsecs. 1-16, and section 6046. The quarterly court is intrusted with the power of voting the stock of the county in any railroad corporation, in all elections of officers, and for directors in such railroad. Upon that court is imposed the establishment and general supervision of roads and ferries; also the supervision of

watercourses, and the establishment and supervision of local improvements. Sections 6038 and 1617-1747. It has power to appoint commissioners over turnpikes, tollbridges, and other public improvements, and to fill vacancies that may occur among the commissioners. It has power to erect or control and dispose of public county buildings. Sections 6044, 500-504, 506-510. It has power to employ a competent person to superintend the construction and repair of such county buildings, bridges, levees, etc., as may be necessary. Section 6048. It has also power to build or assist in building or in obtaining, within the corporate limits of the county seat, a free bridge over and across any river running through and dividing such municipality and county, and to pay for the same. Sections 6049, 6050. It has power to fund the county debt. Sections 6051-6055. It has power to release from double taxes when they have been incurred, and correct errors in the tax list. Section 6043. It also has power to exempt any indigent, decrepit, or other person unable by manual labor or physical exertion to obtain a living from working on the public roads, or paying poll tax, or both, or to allow such persons to hawk and peddle without license. Sections 6042, 2704, 2703.

The foregoing citations and statements give an accurate idea of the general scope of the duties devolved by law upon the quarterly county court. There may be other duties. It has not been our purpose to make the list exhaustive.

We now turn to the duties of the county judge or county chairman.

He is required to hold monthly sessions. Section 6023. "The county clerk shall be the clerk of the county court to be held by the county judge." Section 6025. He has jurisdiction over the probate of wills, the granting of letters testamentary and of administration, and the repeal and revocation thereof; over all controversies in relation to the right of executorship or of administration; the settlement of accounts of executors or administrators; the partition and distribution of the estates of decedents; and for these purposes the power to sell the real and personal property belonging to such estates, if necessary to make the partition and distribution, or if manifestly for the interest of the parties; over the settlement of insolvent estates, and for this purpose to sell real or personal property belonging thereto, at the instance of the personal representatives or the creditors, where the amount of the estate does not exceed $3,000; the appointment and removal of guardians for minors and persons of unsound mind, and all controversies as to the right of guardianship, and the settlement of guardian accounts; over the allotment of dower in lands; over the partition, sale, or division of land; over the changing of names and the legitimation and adoption of children; over the issuance of inquisitions of unsoundness of mind; over the binding out of apprentices, and all controversies between master and apprentice. Sections 6027, 6029. He has all the powers of the old

quorum court. Sections 6006, 6022. Where the juris-
diction of the court over which he presides is concurrent
with that of other courts, he is vested with all incidental
powers belonging to or conferred by law upon the court
with which such jurisdiction is concurrent, for the pur-
pose of exercising and effectuating such jurisdiction,
and the practice is assimilated to that of such other
courts. Sections 6031-6037, inclusive.

The foregoing presents an accurate view of the scope
of the duties of the county judge, but does not embrace
all of his duties.

We now come to two sections of the Code which bring
into close contrast the division of jurisdiction between
the quarterly court and the court presided over by the
county judge or chairman. They are as follows:

"Sec. 511. The judge or chairman of the county court
presides over the county court at its quarterly sessions
and holds the monthly county court for the dispatch of
all business intrusted to that court, and not especially
required to be done by the quarterly court."

"Sec. 5993. All business in the county court which
cannot lawfully be done by the county judge or chair-
man, shall be done at the quarterly sessions, to be held
on the first Mondays of January, April, July, and Octo-
ber of each year."

Construing these two sections together, it is seen that
the county judge or chairman has jurisdiction of all bus-
iness belonging to the county court except that which is
"especially required to be done by the quarterly court."

Johnson v. Brice.

This meaning is brought out very clearly by the language of section 5993 as it appears in the Code of 1858. It there appears as section 4181, and reads as follows:

"All business in the county court *required to be done by more than three justices of the peace* shall be done at the quarterly sessions, to be held on the first Mondays of January, April, July, and October of each year," etc. We have italicized certain words in the section quoted in order to bring out the meaning more clearly. If we substitute for the words "more than three justices of the peace" the words, "the quarterly court," the meaning is seen to be precisely that which so clearly appears in the language of section 511. It is clear that the substitution above mentioned makes a correct rendering of the meaning of section 4181.

A true construction of these sections of the Code seems to warrant the conclusion that the county judge or chairman has all jurisdiction belonging to the county court, except such as is expressly or by reasonable implication devolved upon the quarterly court.

Now, there is no statement expressly devolving jurisdiction upon the quarterly court to try contested election cases of county register or county clerk, nor is there any necessary or even plausible implication to this effect to be drawn from any other statute. On the contrary, the implication, aside even from the sections of the Code last quoted, is that the jurisdiction belongs to the county judge. That officer is a judicial officer, and a contested election, in respect of the offices above

mentioned, is a regular litigation—a lawsuit. The sections of the Code which we have referred to, setting forth respectively, in general, the jurisdiction of the quarterly court and of the court held by the county judge, show in clear outline the diverse nature of the two jurisdictions. In the case of the quarterly court, it is perceived that the duties devolved are essentially legislative, while, as respects the court held by the county judge, the jurisdiction devolved is wholly judicial. Moreover, it should require very extraordinary reasons, not to say irrefragable ones, to induce any court to conclude that it was the purpose of the legislature to impose such jurisdiction upon the quarterly court. That court, as every one knows, is often composed of fifty members. Their attendance would amount to a daily charge against the county of $75 for attendance fees, to say nothing of mileage. Contested election cases are frequently long drawn out, lasting for days. It is not to be presumed that it was the intention of the legislature to impose this unnecessary expense upon the county, when such a matter, to say the least, could be as well attended to by a single man—the judge of the county court—as other lawsuits are conducted in that court.

Again, the county register must be inducted into office, by giving bond and taking the oath required by law, at the next term immediately succeeding his election. Shannon's Code, sec. 559. The oath must be taken in open court. Ib. Failure to give bond within

thirty days after his election forfeits the office. Id., sec. 561. The election is required to be held on the first Thursday in August, and the term of every civil officer must be computed from the first day of September next succeeding the election. Id., secs. 1154, 1155. This is true as to the clerk of the county court as well as of the register. His term also begins on the first Monday of September after the election, as do those of all other civil officers elected by the people (Id., secs. 1154, 1155), and he must qualify before the court by giving bond (Id., sec. 402) and taking the oath (Id., sec. 408). The polls are to be compared at the courthouse on the first Monday after the election, and certificates of election issued to each person elected.

These provisions all point to the conclusion that the polls are to be promptly compared, and the result avouched by certificates, also promptly, and that the officers are to be installed into their duties by the proper court on the first Monday of September after the election; and that court can be no other than the county court, presided over by the judge or chairman of the county court. The quarterly court could not be referred to, for the reason that it does not meet in due course until the following month, thirty days after the officers are required by law to qualify. Therefore, recurring to the principle that, when no other provision is made for the contest of an election, the court that has the power to induct has the jurisdiction to dispose of the contest, it seems from this standpoint, also, there

can be no doubt that the county judge had jurisdiction
to hear the contest, rather than the quarterly court.

We are referred to *Leonard* v. *Haynes,* 14 Lea, 447,
as an authority against this conclusion. That case,
however, is not in point. That was a case where it ap-
peared that the contest was over the office of county
superintendent of public instruction. This officer is
required to be elected by the quarterly court itself.
Haynes and Leonard had been voted for in the court,
and Haynes had been declared elected. Subsequently
Leonard instituted a contest before the chairman of the
court, and this court, when the case reached us on ap-
peal, held that the chairman did not have jurisdiction
to try that case, but that it must be tried by the quar-
terly court itself. In disposing of that matter, the
court said: "Moreover, if the chairman of the county
court of Marshall county have the jurisdiction to hear
and determine this contest, we will have the singular
anomaly of the county court of that county, as a court,
expressing its judgment or decree, through the justices
constituting it, that Haynes was elected county super-
intendent, and that court, as a court, expressing its
judgment or decree, through its chairman, that Leonard
was elected. If it be said that the powers of the county
court are ministerial, judicial, and legislative, and that,
in the election of a county superintendent by the jus-
tices, legislative power was exercised, and in determin-
ing this contest its judicial power is alone involved, we
reply, if this be conceded, that, in the absence of stat-

utory limitations, the justices, as a legislative body, can adopt their own methods, not in conflict with the law of the land, of expressing this legislative choice, and if they adopt a method of expressing their will, and under this method, as construed by judicial rules, do express their will, but they decide that they have not, and proceed under this method until they do reach a choice acceptable to this legislative judgment, then this legislative judgment, if not violative of the law, can not be reviewed and set aside by the court. In this aspect of the question, it involves an application of the rules of parliamentary law to the facts, more than the rules and principles of law in its usual application to the decisions of disputed rights. We therefore hold that the county court held by the chairman had no jurisdiction or power to hear and determine this contest."

But this is a different question altogether from the case of the contest of the office of an officer elected by the vote of the people at large. In such a case the contest must be tried before the chairman or county judge, as in the case of ordinary matters of litigation triable in that court.

The county judge so held in the present cases, and, being incompetent, because of interest, to hear and determine these cases upon their merits, he certified them to the circuit court, which was the correct course. Shannon's Code, sec. 5723.

In the circuit court the cases were tried before Hon. W. L. Welcker, special judge.

In this court a motion was made to expunge certain parts of the petitions. We deem it unnecessary to review this action. We think his honor was correct in expunging the argumentative matter referred to in the sixteenth section of the motion in the case of *Cooper* v. *McMillan,* but that in other respects the matter expunged was in the main competent, and the motion did not so separate the incompetent from the competent as that the court could properly pass upon them. So the whole motion should have been overruled, except the said sixteenth section of the motion in the Cooper case. There are, it is true, many irrelevant matters appearing in the petition, but the court is not required to go through the pleadings and pick them out, in the absence of a motion pointing out the objectionable matters with reasonable accuracy. So we shall treat all of the matters appearing in the petition, as stated, as there written, with the exception above mentioned.

After the motion to expunge was heard in the court below, his honor then took up and disposed of the demurrers filed to the petitions.

These petitions are not filed, presenting alternative grounds, and in that respect differ from the petition filed in the case of *Maloney* v. *Collier,* 4 Cates, 78, 83 S. W., 667. That is, these petitions are not filed for the purpose of asserting title to the respective offices involved in the controversy, and, in the alternative, for the purpose of having the election declared void, as in the case of *Maloney* v. *Collier,* 4 Cates, 78,

but for the sole purpose of asserting title to the office. But in stating their claims, they set out facts which, if true (and they must be taken as true on demurrer), make the whole election void, and show that no one could have title to an office thereunder. That is to say, the petitioners are before the court, asserting title to an office under an election which they themselves show was no election—an utterly void proceeding—and, of course, no one could claim title under such a proceeding. Therefore the demurrer, which in substance raises this point, must be sustained.

In response to this point it was insisted upon the argument by the counsel for contestants that, if this position be sound, then, the greater the fraud or wrongdoing in an election, the more secure the wrongdoers. This is not in any sense a correct view of the matter. We have already shown, in the case of *Maloney* v. *Collier*, 4 Cates, 78, that the validity of an election may be tested in a contested election proceeding. But the pleadings filed must be properly drawn to present the question. In the case of *Maloney* v. *Collier*, 4 Cates, 78, the pleadings were so drawn. The petition in that case presented both grounds of contest, presenting them in the alternative—somewhat vaguely, it is true, but sufficiently to place clearly before the court that the purpose of the pleading was to offer for the consideration of the court both grounds of contest, and to place the rights of the petitioners to

make the contest upon both grounds. In the case now before the court the reverse is true. Only the one ground—that of a claim of title to the office—is presented, and that accompanied by a statement of facts which show that it would be impossible to assert title thereunder.

We do not deem it necessary to set out in this opinion the facts referred to, embraced, as they are, in petitions each containing more than fifty pages of typewritten matter. It is sufficient to say that they are substantially set out in the opinion filed to-day in the case of *Nelson* v. *Sneed,* 4 Cates, 36, 83 S. W., 786, and charge, in effect, a violation of all of the safeguards which the law has thrown around elections. No pleading which is bottomed alone upon an assertion of title to an office under an election so held can be entertained.

Nor can there be any purging of the polls under an election so held, for the purpose of maintaining title thereunder. The results are rendered so incurably uncertain that no relief can be granted in such a case, except to annul the whole election.

But in any case there must be proper pleadings filed as a basis for the court to act upon; and when pleadings are filed, bills or petitions, with demurrers thereto, these must be considered on their face, and in view of the rules of law applicable thereto. So considered, the inevitable result is that the petitions in the cases now under examination must be dismissed, the demurrers thereto being sustained.

Johnson v. Brice.

We add that, even if we could, notwithstanding the facts averred in the petitions, assume the validity of the election, and so test the question of title, there is in neither of these petitions a statement setting out with the certainty which the law requires that either of the petitioners were deprived of a sufficient number of votes at the several polling places mentioned to change the result of the election.