Mrs. Nita Davis *v*. Mrs. DeWitt Williams.

*(Knoxville.* September Term, 1928.)

Opinion filed December 24, 1928.

36

38

CANTRELL, MEACHAM & MOON and J. L. FOUST, for complainant, appellee.

ALLISON, LYNCH & PHILLIPS, for defendant, appellant.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

The defendant and appellant, Mrs. DeWitt Williams, was designated by the County Judge of Hamilton County as "Delinquent Poll Tax Collector," under the authority of Private Acts of 1927, chapter 395. She issued a distress warrant against complainant, Mrs. Nita Davis, for the collection of a poll tax assessed against her, together with penalties and fees, increasing the tax of $2 to an aggregate of $6.14. Mrs. Davis then filed her original bill in this cause to enjoin levy and execution of the distress warrant, upon the ground that the statute creating the office held by Mrs. Williams is unconstitutional and void. The Chancellor sustained the bill, and the defendant has appealed to this court.

The Chancellor held the act unconstitutional as in violation of article 11, section 17, of the Constitution, which provides: "No county office created by the legislature

shall be filled otherwise than by the people or the county court."

(1) The statute provides that "the office of Delinquent Poll Tax Collector is hereby created" for counties of a designated population, including Hamilton County. It provides that the office shall have a term of four years. The duties and powers of the officer are designated, and penalties for misfeasance in office are prescribed. The collector is required to subscribe to an oath of office, and to execute a bond for the protection of the state and county. The collector is allowed the same fees for services rendered as is allowed by law for similar services by other officers.

In prescribing a term of office, a bond, an oath of office, and in designating the powers and duties of the officer, and his compensation for services performed, the statute clothes the incumbent with all the attributes of an officer, as distinguished from a mere employee.

The contention of appellant that the statute provides for the appointment of an employee rather than a county officer is, therefore, overruled. *Whitehead* v. *Clark*, 146 Tenn., 660; *State ex rel.* v. *Jones*, 143 Tenn., 575; *State ex rel.* v. *Buck*, 138 Tenn., 112.

(2) Section 1 of the statute provides: "The first term of said office shall be filled by appointment of the county judge and the person so appointed shall hold office until July, 1931, and until his or her successor is appointed and qualified."

It is then provided that beginning with July, 1931, each four-year term shall be filled by appointment of the county judge, confirmed by the quarterly county court.

It is contended for the appellant that this method of filling the office is in compliance with article 11, section

17, of the Constitution, on the theory that the words county court," as used in the Constitution, mean either the quarterly county court, held by the justices of the peace, or the county court presided over by a county judge.

Unless the constitutional provision can be given this construction, it is obvious that the method of filling the office, prescribed by the statute, is unconstitutional. The power conferred upon the county judge to name the first officer cannot be sustained, because the officer so named is to continue in office until 1931, with many sessions of the county court intervening. *Grindstaff* v. *Carter County,* 152 Tenn., 605.

*(3)* And in so far as the subsequent terms are concerned, it is obvious that the mere right of confirmation, conferred upon the quarterly county court, is not equivalent to the power to appoint.

*(4)* The validity of the statute must, therefore, depend upon whether the reference to the county court in the constitutional provision above quoted is only to the quarterly county court, or whether it leaves the General Assembly with a discretion to provide for the filling of a county office by the quarterly county court or the county court presided over by the county judge or chairman.

*(a)* At the time of the adoption of the Constitution in 1870 the Code of 1858, by sections 4179 et seq., provided that the county court consists of the justices of the county, held monthly, and divided into a quarterly and a quorum court, the first held by all or any number of the justices necessary to transact business, and the latter held by any three or more of the justices, designated at the quarterly session.

Section 4197 of the Code of 1858 abolished the quorum court in each county authorized to elect a county judge, and vested the county judge with "all the jurisdiction and powers now belonging to the said quorum court."

The quorum court was abolished in all counties of the State by chapter 70 of the Acts of 1875; and in all counties not authorized to elect a county judge the jurisdiction and powers of the quorum courts were vested in the chairman of the county court.

*(b)* In *State ex rel.* v. *Glenn,* 54 Tenn., 472, 491, 494, decided in 1872, Justice McFARLAND, speaking with reference to article 11, section 17, of the Constitution, observed:

". . . for although this clause of the Constitution does say that the office shall not be filled otherwise than by the people or the County Court, yet it does not say in which one of the two modes the office is to be filled, and it is clear that in such a case there must of necessity be legislation upon the question before this provision could be fully carried into effect, and, in some cases, a serious difficulty might arise as to whether the power was to be exercised by the County Court held by the Judge, or the Quarterly Court held by the Justices; the clause only says the County Court."

References to the "county court" in statutes have been variously construed by this court to apply in some cases to the court presided over by the county judge and in other cases to the quarterly session of the justices of the peace, according to the subject-matter of the legislation construed and the conclusion of the court as to the intention of the legislature, in the light of other statutes and the underlying division of jurisdiction between the quarterly sessions and the monthly sessions.

*(c)* In *State* v. *Campbell,* 76 Tenn., 74, a statutory direction that a vacancy in the office of county court clerk should be filled by the court, following the similar provision of the constitution in article 7, section 2, was con-

strued to confer the power upon the quarterly county court; the Supreme Court being carried to this conclusion by the fact that other statutes dealing generally with the filling of vacancies by the county court made provision for notice to the justices of the peace and appeared to contemplate an election rather than an appointment. The court concluded the consideration of the subject by saying:

"We may add, if this were a question of doubt, the power should be held to belong to the justices, where it was certainly originally lodged, rather than to the one man."

Referring to the origin of the monthly or quorum court this court, in *State* v. *Campbell, supra,* said:

"By the act of 1837-8, amending the act of 1835, provision was made by which all except the quarterly terms of the courts might be held by three of the justices to be selected for that purpose, styled the quorum court; and afterwards the judicial powers of the court to a great extent, as they were increased from time to time, were vested in this quorum court: Code, sections 4201-2-3. The court, however, remained the same, the only difference being that for certain purposes only three justices were required to be present. The quarterly terms were still held by all the justices or a majority."

*(d)* In *Johnson* v. *Brice,* 112 Tenn., 59, this court construed section 1308 of Shannon's Code (section 888 of the Code of 1858), vesting the "county court" with jurisdiction to hear and determine all cases of contested elections of certain county officers, and held that the reference was to the court presided over by the county judge or chairman.

The court found from an exhaustive review of the powers and duties of the quarterly session of the county court and the session presided over by the county judge, that in the case of the quarterly court, "the duties devolved are essentially legislative," while in the case of the court held by the county judge or chairman, "the jurisdiction devolved is wholly judicial." It being apparent that the determination of a contested election case is a judicial function, the court concluded that it was not the purpose of the legislature to impose jurisdiction of such a controversy upon the quarterly court.

*(e)* In *Murray* v. *State ex rel. Luallen,* 115 Tenn., 303, a statutory direction that the resignation of a justice of the peace should be tendered to the "county court" was construed to refer to the court presided over by the county judge or chairman, following the holding in *Johnson* v. *Brice, supra,* that "the county judge or chairman has all jurisdiction belonging to the county court, except such as is expressly or by reasonable implication devolved upon the quarterly court."

*(f)* In *Prescott* v. *Duncan,* 126 Tenn., 106, 119, this court said that up to and after the adoption of the Constitution of 1870, "a quarterly county court was the only local administrative authority recognized by our constitution and laws." While reference was not there made to *Johnson* v. *Brice, supra,* we think the court had in mind, in making the statement just quoted, that the powers theretofore vested in the county court presided over by the county judge or chairman were purely judicial in their nature, as held in *Johnson* v. *Brice,* and that the legislative and administrative powers of the county had remained with the quarterly session of the county court, composed of the justices of the peace.

*(g)* While the county judge is usually made the chief financial agent of the county, and is usually designated as the officer to whom county officers, handling county funds, must account, these are "added powers," pertaining to the office of county judge and not to the court over which he presides. *State ex rel.* v. *Glenn,* 54 Tenn. (7 Heisk.), 472, 490.

*(h)* The power of election or appointment to office is a political power, not inherently legislative, executive or judicial. *Richardson* v. *Young,* 122 Tenn., 471, 497.

In *Prescott* v. *Duncan, supra,* this court was called upon to determine the constitutionality of a statute vesting the general administrative powers of a county in a board of commissioners, elected by the people, to the exclusion of the quarterly county court; and it was necessary to decide, whether the quarterly county court is a constitutional court, which the General Assembly may not abolish, and if so, whether its constitutional powers included the duties and powers transferred by the statute to the commissioners.

*(i)* The court found that the quarterly county court is not mentioned by name in any of the three Constitutions of Tennessee, but held that its existence as a creature of the Constitution of 1870 must be implied from powers conferred upon the justices of the peace which could only be exercised by them in their collective capacity, and from the reference to "the county court" in article 11, section 17, together with the fact of its contemporaneous existence as an institution of local government in all counties of the State. The court said:

"When the Constitution of 1870 conferred 'upon the justices of the peace' the performance of certain duties which could only be done by them in their collective ca-

pacity, the convention must have had in mind the quarterly county court; so also, when it directed the performance of political administrative duties by the 'county court,' it must have intended the quarterly county court, because the quorum court in all of its history in this State had never exercised political or administrative power, and, according to well-established rules of construction, it is but just to assume that the convention intended the court to act as it had always done under the existing laws and customs. Therefore, it is clear that the quarterly county court is a constitutional court which cannot be abolished by legislative enactment. *Pope* v. *Phifer*, 3 Heisk., 682; *Redistricting Cases, supra.''

In a subsequent portion of the opinion in *Prescott* v. *Duncan, supra,* the court further said:

''So we find the quarterly county court impliedly imbedded in the constitution of 1870, and this implication arises solely from the delegation by that instrument of certain duties to 'justices of the peace' and the 'county court' which could only be performed by them when assembled in body. This assemblage was well known at the time as the quarterly county court. An implication that the quarterly county court is a constitutional court is necessary in order to give effect to the plainly expressed intention that the 'justices of the peace' and the 'county court' should perform the duties directly imposed upon them. If the constitution did not expressly require that 'there shall be elected for each county by the justices of the peace one coroner and one ranger' (section 1, art. 7); that vacancies 'in the office of sheriff, trustee, or register . . . shall be filled by the justices' (section 2, art. 7); that 'No county office created by the legislature shall be filled otherwise than by the people

or the county court' (section 17, art. 11); there could be no just implication that the quarterly county court is a constitutional court because the implication of such restraint upon the power of the legislature to provide other and different forms of local government for the counties would not be necessary to support and give effect to any part of the constitution."

*(j)* The court declined to hold that, because the quarterly county court is perpetuated by the constitution, it is vested by the constitution itself with all the statutory powers it possessed as a part of the system of government existing when the constitution was adopted; but held that the powers expressly conferred by the constitution upon the quarterly court are constitutional powers which the legislature may not destroy or impair. The court said:

"Hence, we hold that the quarterly county court is a constitutional court held in existence by the constitution for the purpose only of performing the duties directly imposed upon it by that instrument. As to those duties, the legislature cannot impair or destroy them." (126 Tenn., 134.)

*(5)* Learned counsel for the appellant recognize the effect of *Prescott* v. *Duncan,* as holding that article 11, section 17, of the constitution refers to the quarterly county court as an existing institution to be perpetuated, but insist that the reference to the quarterly session of the county court is not exclusive, and that it may also include the court held by the county judge, as Justice McFarland intimated his view to be, in *State* v. *Campbell, supra.*

We are of the opinion that this contention of counsel for appellant cannot be sustained. The language used by

Chief Justice LANSDEN, in *Prescott* v. *Duncan,* expresses the opinion of the court that article 11, section 17, of the constitution refers to the quarterly county court as distinguished from the quorum court, or the court held by the county judge. The language is: ''when it directed the performance of political administrative duties by the 'county court,' it must have intended the quarterly county court, because the quorum court in all of its history in this State had never exercised political or administrative power.''

This language is a judicial interpretation of the intent of the framers of the constitution. Just as the court construed a statutory reference to the ''county court'' to mean the court held by the county judge or chairman, in the cases hereinabove cited, when judicial powers and jurisdiction were the subject of legislation, the court construed the similar reference in the constitution to mean the quarterly session of the county court, because a political or administrative function is the subject of the constitutional provision, following the division of the powers of the county court between the quarterly session and the monthly session noted in *Johnson* v. *Brice, supra.*

*(6)* The provisions of the constitution are to be given effect according to their intent, as gathered from the entire instrument. ''State constitutions are adopted as a whole, and a clause which, standing by itself, might seem of doubtful import may yet be made plain by comparison with other clauses or portions of the same instrument, therefore it is a proper rule of construction that the whole is to be examined with a view of arriving at the true intent of each part.'' *Prescott* v. *Duncan, supra,* pp. 127-128. Applying this rule of construction, it ap-

pears to us that the same considerations which impelled this court to conclude that the quarterly county court is a constitutional court, which may not be destroyed by statute, require that article 11, section 17, be construed as referring only to the quarterly county court.

(7) We do not hold that, having created a constitutional court, the convention intended that such court should retain all powers previously exercised, but we hold that the powers expressly conferred by the constitution upon the justices composing the quarterly county court, and the preexisting division of power between the quarterly and quorum courts, are persuasive that the reference to a county court, in article 11, section 17, of the constitution was intended to include only the quarterly county court.

In *Grindstaff* v. *Carter County*, 152 Tenn., 605, 612, the provision of the constitution was given the same construction, the court saying:

"Under this section of the Constitution two methods are provided for filling a newly-created county office, *viz.*: by the people at a general election, or by their designated agents, the justices of the county court."

So, we are of the opinion that the reference to the county court in article 11, section 17, of the constitution is to the quarterly county court, and not to the court presided over by the judge or chairman.

The statute, chapter 395 of the Private Acts of 1927, creating a county office and providing for a filling of the office contrary to the provisions of the constitution, is void and cannot afford any authority for the acts of the appellant, complained of by the original bill.

(8) The appellant cannot defeat the injunctive relief sought by complainant, on the theory that she is a

*de facto* officer. The bill does not question her right to hold an office created by law, but asserts that, because of the unconstitutionality of the statute, there is no such office.

The holding in *Heard* v. *Elliott,* 116 Tenn., 150, relied upon by appellant, is expressly conditional upon the existence of the office, the powers of which the defendant assumed to exercise.

It results that the assignments of error will be overruled, and the decree of the Chancellor affirmed.