STATE *ex rel.* NASH *v.* MARION COUNTY.

(*Nashville*, December Term, 1944.)

Opinion filed January 6, 1945.

152

A. F. SLOAN, of Jasper, for appellant.

A. A. KELLY, of South Pittsburg, for appellee.

MR. JUSTICE PREWITT delivered the opinion of the Court.

The State of Tennessee filed this suit to recover of Marion County the sum of $1,121.04 alleged to be due it for the support and maintenance of inmates of the Tennessee Home and Training School for Feeble-Minded Persons from Marion County in excess of the quota to which the county is entitled under the law. It appears that at the time each one of the three inmates was committed the county had inmates in said institution in excess

of the quota allowed, which was four persons. The commitment papers executed between the State authorities and Marion County were signed by the county judges of the county.

The county interposed a demurrer to the bill on the ground that the contracts exhibited were invalid and that the county judges had no right to bind the county. This demurrer was overruled and the present appeal resulted.

This suit involves the county's legal liability for the maintenance of its indigent feeble-minded citizens.

In 41 Am. Jur., 690, Sec. 13, it is said:

"The primary duty to support needy or indigent persons rests, as has been seen, upon certain relatives who are close of kin, but where there are no such relatives, or where they fail, through refusal, neglect, or inability, to perform such duty, the duty to support them falls upon the public, the prevention of any person from suffering for the necessities of life being a legitimate exercise of governmental power."

Section 4792 of the Code (Ch. 56, Acts of 1826) requires every county to maintain an asylum for the poor.

From time to time various acts have been passed by the Legislature having in view the care and maintenance of unfortunates. These statutes for the most part provide for State institutions and provide a refuge for a certain number to be cared for by the parent, the State itself, and then provision is made by which the counties are permitted to send patients to the State institutions on a population basis, the State to bear the expense of the respective quotas, and when these quotas have been reached to provide a place of confinement for the unfortunates of the counties in excess of the respective quotas.

██ Sections 4433 et seq. of the Code comprise the charitable and reformatory institutions of the State and embrace the sixteen institutions mentioned in Title 11. Construing Title 11 of the Code, beginning with section 4433, it seems that the entire legislative intent is to care for indigent and incompetent persons. These sections should be construed together. This being true, the county judge is authorized to commit incompetent and in-indigent persons as county patients. Section 4518 empowers the county judge, after proper hearing, to commit these unfortunate persons, and this section would be meaningless if he had no authority to contract for their support and maintenance.

The latter part of section 4505 of the Code is in the following language: ''Those legally liable for the care and maintenance of said feeble-minded persons being the same as that contained in, and set out in sections 4433 et seq.''

. ██ This portion of the last-quoted section contemplates that the procedure with reference to admitting patients in the feeble-minded institution is the same as that prescribed for the Hospitals for the Insane. Sections 4433 et seq., referred to in section 4505, set out minutely the procedure by which the mentally unfortunates are committed to the Hospitals for the Insane. That procedure contemplates, as was the case here, that the several counties are entitled to a certain quota of patients to be paid for by the State on a population basis, and the remaining patients, other than private pay patients, shall be taken care of by the several counties. The record discloses that the relator followed the same statutory procedure in admitting patents to the Home for Feeble-minded as that required when unfortunates are committed to one of the State insane hospitals.

█ It is insisted on behalf of the county that the capacity of the Tennessee Home and Training School for Feeble-Minded Persons is five hundred patients, and since the bill does not show that the inmates have reached this maximum number it will be presumed that there were ample accommodations at the institution to take care of the three inmates involved herein without cost to the county, and that it will be further presumed that some of the counties had not reached their respective quotas.

Such a construction would not harmonize with the intent of the legislative acts. This institution belonged to the State as distinguished from the county, and the Legislature evidently had in mind an equal distribution of patients among the counties on a population basis. Therefore when a quota has been reached a fair distribution has been made, and any excess of patients to be thereafter cared for is a responsibility to be shouldered by the respective counties.

Section 4534 of the Code provides as follows:

"Distribution of patients among the counties; age limit.—The patients or inmates to be received and cared for under this law shall be distributed among the several counties, in accordance with the population thereof by the federal census, by the commissioner of institutions in proportion to the capacity of the institution, but in no event to exceed the number of five hundred to be maintained therein at any one time; provided, that said commissioner shall have the discretion to receive patients from a county whose quota has been exhausted, if there be vacancies in said institution, and provided, further, that no patient or inmate shall be received under the age of seven years or over the age of fifty years."

The sections of the Code with respect to State institutions evidence an intention to lay out a general scheme

of legislation on a population basis to care for these unfortunate people. As before stated, we think these various sections relating to State institutions should be read and construed together so as to make them harmonize.

Section 4439 of the Code provides that if a county's quota has been exhausted in the Hospitals for the Insane the county judge is authorized to contract with the State for admission of patients at the expense of the county.

These statutes when construed together authorize the county judge to contract with the State for the support and maintenance of a poor feeble-minded person when the county's quota of "free" patients has been exhausted.

In the case of *Johnson* v. *Brice*, 112 Tenn. 59, 69, 83 S. W. 791, 793, the Court reviewed the respective powers and authorities fixed by law in the quarterly county court or the court composed of the justices of the county and the duties of the county judge, and said:

"A true construction of these sections of the Code seems to warrant the conclusion that the county judge or chairman has all jurisdiction belonging to the county court, except such as is expressly or by reasonable implication devolved upon the quarterly court."

The trial and commitment of feeble-minded persons is vested concurrently in the chancery, circuit, county and probate courts by section 4510 of the Code. The necessary implication of this statute is that the jurisdiction of the county court is exercised concurrently with the other named courts through the action and office of the county judge as distinguished from the county court composed of the justices.

Section 4534 of the Code was amended by the Legislature in 1941, chap. 135, which amendment, we think,

amounts to an interpretation by that body of the effect of the section.

It will be noted here that we are dealing with express contracts duly executed on behalf of the county, and it should be further noted that the officers charged with the administration of these statutes have placed this construction upon them.

It results that we are of opinion that the county judges of Marion County were vested with ample authority to execute the contracts herein, and the decree of the chancellor is affirmed.