HERBERT CAGLE *et al. v.* GEORGE F. MCCANLESS *et al.*

(*Knoxville,* September Term, 1955.)

Opinion filed December 9, 1955.

THOMAS S. MYERS and W. A. WILKERSON, both of Chattanooga, and Nat Tipton, Assistant Attorney General, for appellants.

ROBERT & WEILL, of Chattanooga, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The complainants, as citizens and taxpayers of Hamilton County, filed their original bill in the Chancery Court against George F. McCanless, Attorney General of the State; the Commissioners of Election; members of the Hamilton County Council; and the Chairman of the County School Board, seeking a declaratory judgment to the end that Chapter 31 of the Private Acts of 1955 be declared unconstitutional.

The bill charges that the said Act is unconstitutional in that "it is attempting to abolish the office of the Superintendent of Public Instruction in Hamilton County, Tennessee, and to create the same office with the identical duties and responsibilities under the name of Director of Schools of said County. That by the provisions of said Act it is attempted to transfer the election of this county official from the County Court and vest it in the County Board of Education to fix the compensation, qualifications and tenure in office of said county official." It is further charged that the Act is unconstitutional be-

cause it is in conflict with Article XI, Section 17, of the State Constitution which ordains: "No county office created by the Legislature shall be filled otherwise than by the people or the County Court." Under the general law of the State, Code, Section 2346, the county court is authorized to elect the County Superintendent of Schools. The bill, as amended, charges that the Act is in violation of Article XI, Section 8, of the Constitution which provides that the Legislature may not suspend a general law for the benefit of an individual.

The defendants, members of the County Board of Education, demurred to the bill on numerous grounds which need not be specifically stated. Suffice it to say that the demurrer challenged the complainant's contention that the Act in question is invalid upon the grounds charged in the bill.

The Chancellor overruled the demurrer and in an excellent opinion, filed with the record, declared the said Act to be in violation of the Constitution. From this decree the defendants were granted an appeal to this Court, assigning the following errors:

(1) "The Court erred in holding said Act to be in violation of Article XI, Sec. 17, of the Constitution."

(2) "The Court erred in holding said Act to be in violation of Article XI, Sec. 8 of the Constitution."

The principal argument of appellant's counsel is that the Act does not create a county office, and that the changes made in the administration of county schools is not colorable. Numerous authorities are cited by counsel in support of these contentions, which we will now review.

The case of *State ex rel. Llewellyn* v. *Knox County,* 165 Tenn. 319, 324, 54 S. W. (2d) 973, 974, cited and relied on, is not controlling. The Act therein assailed merely provided for the appointment of a clerk to be employed

by the County Judge and imposed upon him the "duties of purchasing agent for the county." The person so employed was not an official, but was acting as a paid employee of the county.

In *Davis* v. *Williams,* 158 Tenn. 34, 12 S. W. (2d) 532, the Act created the office of " 'Delinquent Poll Tax Collector, ' " Priv. Acts 1927, c. 395, who was to be designated by the County Judge. It will be noted that the Act *created an "office"* with a specified term of four years. Quoting from the opinion of Mr. Justice Swiggart, 158 Tenn. at page 39, 12 S. W. (2d) at page 532, "* * * the statute clothes the incumbent with all the attributes of an officer, as distinguished from a mere employee."

The case of *State ex rel. Harris* v. *Buck,* 138 Tenn. 112, 196 S. W. 142, is not in point as supporting the first assignment of error. While Buck was elected by the county court as a qualified county engineer, and subject to reelection, he was held to be an employee. The office of engineer had not been created by the Legislature and no authority was conferred upon the County Court of Madison County to create such an office. The court could exercise only such authority as was conferred by the Legislature.

In the case of *State ex rel. Thompson* v. *Crump,* 134 Tenn. 121, 183 S. W. 505, L. R. A. 1916D, 951, the principal question raised was the right of Mayor Crump and other city officials to have a jury trial in an ouster proceeding, and whether a judgment of ouster would be effective to prevent them from holding a subsequent term of office to which they had been elected. It has no application here.

The case of *Cross* v. *Fisher,* 132 Tenn. 31, 177 S. W. 43, has no application to the case at bar. The Act there construed by the Court, Acts of 1913, was held valid in that

it created no office; that the appointment of Supervisors "whose duty shall be to *assist* county superintendents" did not create a county office. Now in the instant case the Director of Schools does not "assist" anybody. On the contrary he performs all the duties which formerly devolved upon the County Superintendent of Schools.

The counsel cite and rely upon *Prescott* v. *Duncan*, 126 Tenn. 106, 148 S. W. 229, 234. This case dealt with the conflict of authority between the County Court and the Board of Commissioners of Shelby County, the latter office being created by a special Private Act of the Legislature. It was held (Lansden, J.) that "the Legislature may take from the county court all power not conferred upon it by the Constitution," while the legislative power is only limited by Federal and State Constitutions. This opinion merely sustains Article XI, Section 17, that an *office* must be filled " 'by the people or the county court' " and that appointees who have no fixed term or salary are not officers within the meaning of the Constitution. The Private Acts, Chapter 237, Acts of 1911, construed in this opinion, created a new form of county government for Shelby County. It transferred many of the administrative duties of the County Court to the new Commission. This was not a compelling reason for holding that said County Boards of Shelby County were *public officers* within the meaning of the Constitution.

In *Dykes* v. *Hamilton County*, 183 Tenn. 71, 191 S. W. (2d) 155, 156, the Private Act assailed created a "Humane and Juvenile Court Commission" to act in conjunction with a Juvenile Court. The Commissioners were named in the statute. The Commission was self-perpetuating in that in case of a vacancy other remaining commissioners filled such vacancy. It was held that the Commission was not an office as follows: "While the commis-

sion as a unit is an office, we are not impelled to reach the conclusion *that it is a county office* in the sense that vacancies must be filled by the people or the county court." (Italics ours.) We think the Legislature intended to create a permanent agency to deal with delinquents and serve the Juvenile Court rather than to establish an office.

Turning now to consider the express provisions of the Act herein assailed. The Act abolishes the office of Superintendent of Public Instruction and establishes in its place and stead another with all the powers and authority of the former. His qualifications are those "prescribed by law for a Superintendent of Public Instruction in Tennessee," Sec. 2. While the term of office is described as indefinite, Sec. 2, we think it gives him a definite term in that he cannot be removed from office except by the Board after being given written notice of charges and a public hearing upon such charges. The Board is given the power to suspend him. As evidence that the position of Director of Schools is an office, and intended to be so construed, it is repeatedly referred to in the Act as an "office." Section 5 reads as follows:

"Be It Further Enacted, That the Director of schools shall be responsible for the efficient administration of the school system, and shall be vested with all the powers and rights and subject to all the duties and obligations in connection with the administration of the school system as are or may hereafter be provided by law for the County Superintendent of Public Instruction in other counties of the State, it being the purpose and intent of this Act to replace the office of County Superintendent of Public Instruction with the position of Director of Schools, as herein provided, in counties to which this Act is applicable."

■ When the statute is considered as a whole we find it to be unquestionably in conflict with the general law. The statute deals at length with the qualifications, duties, and mode of election of County Superintendents of Schools. Code, Section 2320a et seq. Code, Section 2320b provides:

"In all cases where now or hereafter the method of election shall not be fixed differently by special legislation, the quarterly county court of the several counties of this state are hereby authorized to elect some person possessing the appropriate qualifications as county superintendent of public instruction. The election thereof shall be conducted in the same manner as other elections by the quarterly county court and shall be held at the first meeting of said quarterly county court, in the year 1945 and quadrennially thereafter."

*(2)* His term of office is definitely fixed, whether by the people or the county court. That a County Superintendent of Schools is an officer within the meaning of the Constitution is not really a matter of dispute. *State ex rel. Thomas* v. *Davis,* 159 Tenn. 693, 21 S. W. (2d) 623. This being manifestly true, there seems to us no ground upon which complainants may contend that the "Director of Schools," who takes over all the legal duties devolving upon the County Superintendent of Schools, is not in truth and in fact a public official. There is no escape from the conclusion that the "Director of Schools" is the same office as that of County Superintendent of Schools, and the Legislature has no constitutional authority to transfer the legal duties of one, who is admittedly an officer, to another who claims to occupy a wholly different and inconsistent legal status. *State ex rel. Bailey* v. *Mabry,* 181 Tenn. 7, 178 S. W. (2d) 379, 381. Compare *State* v. *Link,*

172 Tenn. 258, 262, 111 S. W. (2d) 1024, 1025, where Mr. Justice Cook says: "Public office cannot thus be transferred by statute from one official to another." It is further observed in the Mabry case, supra:

"We cannot close our eyes to the palpable effort to legislate the relator Bailey out of office and substitute in his place and stead another person who is designated in another private act to perform the same official duties."

We think the Act in question is also violative of Article XI, Section 8 of the Constitution in that it suspends the general law for the benefit of Hamilton County. Specific provisions of the general law, Code, Section 2320b, have been referred to as well as sections of the Private Act herein assailed. Under Code, Section 2306 et seq. there is established a system of public education. Section 2307 of the Code provides: "The system of education shall be administered by (1) the commissioner of education, (2) the state board of education, (3) *the county superintendents,* (4) the county and city boards of education." (Italics ours.) We have heretofore pointed out the duties devolving upon the County Superintendent of Schools, his qualifications, manner and mode of election. Any material departure therefrom by a private act must be held to be wholly invalid as suspending the general law for the benefit of an individual. *Southern* v. *Beeler,* 183 Tenn. 272, 195 S. W. (2d) 857. See also *State ex rel. Bales* v. *Hamilton County,* 170 Tenn. 371, 95 S. W. (2d) 618, 619, where a private act fixing a minimum salary for teachers was held invalid as an attempt to give special benefit to Hamilton County which was inconsistent with the general law. The underlying reason for holding the act invalid is clearly stated by Chief Justice Green as follows:

"The act before us requires Hamilton county to

pay its teachers a minimum wage, regardless of the condition of the county's treasury. It deprives the county of the right to contract according to its ability, imposing a burden on Hamilton county placed on no other county in the state—all in conflict with the general school law—and the act must accordingly fall."

In *Gallien* v. *Miller*, 170 Tenn. 93, 92 S. W. (2d) 403, a special act, limited to Wayne County, fixed the qualifications for County Superintendents of Schools different from the general law. It was held invalid as in conflict with Article XI, Section 8 of the Constitution. See also *Donathan* v. *McMinn County*, 187 Tenn. 220, 213 S. W. (2d) 173; *Phillips* v. *West*, 187 Tenn. 57, 213 S. W. (2d) 3, opinion by Tomlinson, J.; *Kyle* v. *Marcom*, 181 Tenn. 57, 178 S. W. (2d) 618.

There can be no reason for sustaining the Act on the ground of "urgent necessity" as held in *Baker* v. *Milam*, 191 Tenn. 54, 231 S. W. (2d) 381, i.e., the need for funds to erect a public school building.

We respect the wishes of the citizens of Hamilton County, as expressed in the referendum approving the Act here involved. But their wishes add nothing to the validity of the statute. In other words, if the Act was unconstitutional prior to the referendum it continued to be. Moreover for us to sustain the Act there would be chaos in the State's general educational system. Every county would be privileged to adopt an educational system all its own. This would be an intolerable situation and contrary to the accepted fact that public education in Tennessee rests upon the solid foundation of *State authority* to the exclusion of county and municipal government.

The assignments of error are overruled, and the Chancellor's decree is affirmed.