WALSH *v.* CROOK.

(*Jackson.*    April 9, 1892.)

1. COUNTY COURT.  *Jurisdiction as to disputed land titles.*

County Court has not jurisdiction to determine disputed land-titles, not even as an incident to the exercise of its undoubted jurisdiction to sell a decedent's lands for payment of debts.

Code construed: ¿ 4982 (M. & V.); ¿¿ 4203, 4204 (T. & S.).

Case cited and approved: Dean *v.* Snelling, 2 Heis., 484.

2. SAME.  *Same.  Res adjudicata.*

And its decree in such case does not operate as *res adjudicata* of the matter, although the parties submitted the question without objection to the Court's jurisdiction.  The proceeding is *coram non judice.* Jurisdiction cannot be conferred, in such case, by consent of parties.

Code construed: ¿ 5064 (M. & V.); ¿ 4321 (T. & S.).

Cases cited and approved: Nicely *v.* Boyles, 4 Hum., 177; Whillock *v.* Hale, 10 Hum., 65; Johnson *v.* Britt, 9 Heis., 760.

Cited and distinguished: Leverton *v.* Waters, Thomp. Cas., 278; Leverton *v.* Waters, 7 Cold., 20; Vincent *v.* Vincent, 1 Heis., 333; Pardue *v.* West, 1 Lea, 729.

3. SAME.  *Jurisdiction to sell decedent's lands.*

But the jurisdiction of the County Court over a proceeding to sell a decedent's lands to pay debts is not defeated by the fact that a controversy over the title to the lands arises during its course.  The Court may, nevertheless, proceed to sell the lands, and the purchaser at such sale will acquire such title, and such only, as belonged to the decedent's estate.  Other titles would remain unaffected.

FROM CHESTER.

Appeal from Chancery Court of Chester County. A. G. HAWKINS, Ch.

Walsh *v.* Crook.

I. F. HUDDLESTON for Walsh.

J. S. WHITE for Crook.

LURTON, J.   J. C. Walsh died intestate.   The complainant, who is his widow, was qualified as his administrator.   She regularly suggested the insolvency of his estate, and filed a report showing that no assets had come to her hands, and that the intestate had left no lands out of which either dower or homestead could be assigned.   The defendant, J. A. Crook, filed a claim against the intestate with the Clerk of the County Court, which seems to have been subsequently allowed. Upon the claim thus adjudicated, he filed a petition in the County Court praying a sale of a certain tract of one hundred acres of land for the payment of his debt and those of all other creditors who might come in and prove their claims.   This petition charged that the land sought to be subjected had belonged to the intestate, and that the widow was entitled to dower and homestead out of it, and sought to have the remainder subject to such homestead and dower sold for payment of debts.   Complainant was made defendant both as widow and as administrator.   The heirs at law seem also to have been before the Court by regular process.   Complainant answered this petition, and denied that the land sought to be subjected belonged to the intestate at the time of his death, and set up title in herself under a conveyance

from the intestate, and that she had been in pos-
session for more than seven years, claiming and
holding for herself under her conveyance. Proof
seems · to have been taken · upon this conflict of
title thus presented by this answer. Upon a final
hearing, this issue was decided adversely to com-
·plainant's title, and the land ordered to be sold
subject to a homestead. An appeal seems to have
been prayed and granted, subject to execution of
cost-bond. Bond was never given, but the ·pauper's
·oath tendered the Clerk in lieu of bond. The
order not permitting the Clerk to take the oath,
he properly refused to file her affidavit. The ap-
peal was, · therefore, never perfected.

Before the sale was made, complainant filed the
original bill in this record, setting out the facts
concerning her title to the land about to be sub-
jected to sale, and the issue made in her answer
by which she presented her claim. The theory
of the bill was that the decree of the County
Court was void, as beyond the jurisdiction of the
County Court, in so far as it undertook to ad-
judge her title bad, and that the decree consti-
tuted a cloud upon her title which she sought to
have removed. She sought an injunction to re-
strain any sale until her rights could be adjudged.
An injunction was refused, the Chancellor in his
fiat stating that he did so because he was of opin-
ion that the County Court had jurisdiction of the
subject-matter and of the parties, and had adjuged
the title of complainant to be bad. The bill was,

however, filed, though the sale was not stopped. At this sale the defendant became the purchaser of the remainder interest in the land claimed by Mrs. Walsh. After it had been reported and confirmed, a supplemental bill was filed, setting out these facts, and praying to have the title thus obtained canceled as constituting a cloud.

To the original and supplemental bill the defendant interposed a demurrer, relying upon the decree of the County Court adjudging the issue of title against complainant, as *res adjudicata.* This demurrer was sustained, and the bill dismissed.

The estate being insolvent, the jurisdiction of the County Court to subject any lands of the intestate to sale for the payment of debts cannot be doubted. Clearly, the defendant has obtained any title which descended to the heirs; and the fact that the title was disputed in the answer of Mrs. Walsh did not operate to suspend or defeat the jurisdiction of the County Court to sell whatever interest the intestate had in these lands. The jurisdiction of that Court to adjudge a question of conflict of title is a question quite distinct. If the land turns out to be the land of the intestate, the purchaser has acquired it; but if, on the other hand, it shall appear that the intestate had never owned the land, or had conveyed it, or it had been lost by adverse possession, then the purchaser has obtained no title. The County Court has no jurisdiction beyond that expressly conferred by statute. It has never had jurisdiction to try

and determine conflicting land-titles. This has been repeatedly ruled in partition cases. *Dean* v. *Snelling*, 2 Heis., 484.

The filing of an answer and the submission of an issue upon conflicting titles will not confer upon that Court a jurisdiction not conferred by statute. *Idem.*

Section 5064, Code (M. & V.), providing that the filing of an answer is a waiver of objection to jurisdiction, applies only to the Chancery Court. This, was expressly so ruled in *Dean* v. *Snelling, supra.* We are no more disposed than our predecessors to extend by construction a jurisdiction which that court is so wholly unfitted to exercise. Section 4982, Code (M. & V.), vests in the County Court all incidental power necessary to the exercise of jurisdiction expressly conferred. It has been urged that if that Court has not the power to decide a question of conflict of titles, that it cannot exercise its undisputed jurisdiction in subjecting lands of the intestate to the payment of debts; that its jurisdiction would be at an end whenever the heirs or any one else chose to intervene and set up a claim to the land sought to be sold. This conclusion by no means follows. The wheels of that tribunal cannot be locked by the mere presentation of such an issue. It may, and should, inquire as to the ownership of the lands it may be asked to sell, and it may decree any lands sold that shall appear from the record to have belonged to the decedent. But its decree

will not operate as an adjudication of any real conflict which may exist, nor will it operate as *res adjudicata* in any subsequent action' between the purchaser and one claiming adversely to the title of decedent. Such an adverse claimant may resist the title of the purchaser when sued, or, as in this case, prefer a bill to have his title canceled as a cloud. We are supported in our conclusion as to the effect of such incidental adjudication of conflicting titles by a consideration of the old rule concerning the jurisdiction of the Chancery Court in regard to conflicting titles affected by a decree for partition.

Under that rule, Courts of law were exclusively given jurisdiction in matters involving disputed titles. Originally, it was held that even the filing of an answer did not confer jurisdiction to adjudge a conflict appearing in a partition case, and that a decree of partition could not be relied upon as *res adjudicata* in a subsequent action of ejectment. *Nicely* v. *Boyles*, 4 Hum., 177; *Whillock* v. *Hale's Heirs*, 10 Hum., 65; *Dean* v. *Snelling*, 2 Heis., 489; *Johnson* v. *Britt*, 9 Heis., 760.

But after the passage of the Act of 1851–52, carried into the Code (M. & V.) as § 5064, the filing of an answer was held to be a waiver of jurisdiction. *Leverton* v. *Waters*, Thomp. Cas., 278 (S. C., 7 Cold., 20); *Vincent* v. *Vincent*, 1 Heis., 333.

But, as we have already seen, this act operated only to confer jurisdiction by consent upon the Chancery Court. Concerning the Chancery Court,.

it may be well to observe that, since the extension of the jurisdiction of that Court by the Act of 1877, all question of the power of that Court to determine conflicting titles has been removed. The question presented by this bill and the demurrer is not one as to the power of the Chancery Court to review a decree of the County Court. No such power exists. *Pardue* v. *West*, 1 Lea, 729.

The County Court had no jurisdiction to adjudge the claim of title set up by Mrs. Walsh; hence the decree, so far as it is sought to be set up as *res adjudicata*, is a nullity. The demurrer should have been overruled. The heirs of J. C. Walsh were not necessary parties. The sale operated to pass their title to the defendant purchaser.

Reverse and remand for answer.