

**THE ATTORNEY GENERAL**

**OF TEXAS**

**JOHN BEN SHEPPERD**
**ATTORNEY GENERAL**

AUSTIN 11, TEXAS

July 11, 1956

Honorable Dawson Bryant
County Attorney
Jayton, Texas

Opinion No. S-208

Re: Right of member of the general
public to walk, for fishing
purposes, in a river bed, title
to which has been relinquished
under the Small Bill (Art. 5414a,
V.C.S.)

Dear Mr. Bryant:

Your letter states the following facts:

"The Salt Fork of the Brazos River in
Kent County is a navigable stream, as that
word is defined in Art. 5302, RCS, although
it is non-navigable in fact. The Salt Fork
is not a dry stream but flows a small stream
of water during the driest months of the year.
Practically all the original survey lines of
the Patents and Awards either cross or partly
cross the bed of such river and therefore
would come under the provisions of the 'Small
Act,' Article 5414a, RCS. There are several
large ranches in Kent County that are crossed
by the Salt Fork of the Brazos River. The
owners of such ranches have their ranches
enclosed with substantial fences and are using
the river bed and the land lying on both sides
thereof for the purposes of raising cattle.
The owners maintain water gaps across the
river bed at the places that the river enters
and exits from their particular ranch."

You ask the following question:

"Can the general public enter such en-
closed lands and walk down the bed of the

river, either on the dry bed or in the
water, for several miles and seine for
minnows and fish in the water-holes lo-
cated in such river bed against the
owner's wishes?"

You further request our opinion as to whether
or not such conduct would violate Article 1377, Vernon's
Penal Code.

Under civil law grants made prior to the Act
of 1837, the beds of all perennial streams belong to the
State. McCurdy v. Morgan, 265 S.W.2d 269 (Tex. Civ. App.
1954, error ref.). From your description, the stream
in question is a perennial stream. This ownership of
the bed in the public carried with it under the civil
law the right to use the banks for such things as hunt-
ing, fishing and camping. Dincans v. Keeran, 192 S.W.
603 (Tex.Civ.App.1917); State v. Grubstake Investment
Association, 117 Tex. 53, 297 S.W. 202 (1927); Maufrais
v. State, 142 Tex. 559, 180 S.W.2d 144 (1944).

Grants made since the 1837 Act are governed by
the 30-foot navigability rule. Article 5302, Vernon's
Civil Statutes. The beds of navigable streams as there
defined, adjoining grants made after 1837, are owned by
the State. Manry v. Robison, 122 Tex. 213, 56 S.W.2d 438,
446 (1932). Grants made since 1840 are governed by the
common law, under which the boundary between public
and riparian ownership is fixed at a point in the cut
bank known as the "gradient boundary." Unlike under the
civil law, the public may not as to common law grants go
beyond this line and use the banks for fishing, camping,
etc. Diversion Lake Club v. Heath, 126 Tex. 129, 86 S.W.
2d 441, 447 (1935). However, the court specifically left
open the question as to the right to use of the banks by
commercial navigators "in emergency, or in other circum-
stances." Page 447.

By statute, the waters of every Texas stream
(Art. 7467, V.C.S.) as well as the fish therein (Art.
4026) are public property. The law is not clear as to
the right to fish in public waters over private lands.
In the Diversion Lake Club case, supra, fishermen
launched their boat from a low public bridge and steered
their way into a lake, the outer portions of which were

over submerged private lands. The Supreme Court said at page 443:

> "The general rule is well established
> by the authorities that the right to fish
> in a stream, whether belonging to the public
> in common or exclusively to the owners of
> the land bordering the stream, is determined
> by the ownership of the bed."

However, at page 446, the court said that the fishermen could fish over these private lands because, though the bed was private, the waters were public.

In Taylor Fishing Club v. Hammett, 88 S.W.2d 127 (Tex.Civ.App.1935, error dism.), it was held that the bed of a non-navigable lake belonged to the riparian landowner and that a neighbor fisherman had no right to cross the boundary line into the lake by boat. The court cited the Diversion Lake Club case for the proposition that ownership of the bed determined the right to fish. For a similar holding, see Fisher v. Barber, 21 S.W.2d 569 (Tex. Civ.App.1929). And it has been held that, despite public ownership of fish in streams, a person has no right to cross private lands to get to a fishing spot. Reed v. State, 175 S.W.2d 473 (Tex.Civ.App. 1943); Smith v. Godart, 295 S.W. 211 (Tex.Civ.App. 1927).

In State v. Bradford, 121 Tex.515, 50 S.W.2d 1065, 1077 (1932), the court said that the reservation of waters of streams to the public implies "all things necessary to the practicable and substantial use of and enjoyment of the things reserved," and that a liberal construction of the reservation in behalf of the public is required. The court further said that "nothing short of express and positive language can suffice to evidence the intention to grant exclusive private privileges or rights in that held for the common use and benefit." To the same effect see State v. Grubstake Inv. Assoc., supra; Anderson v. Polk, 117 Tex. 73, 297 S.W. 219, 223.

The Small Bill (Art. 5414a, V.C.S.) provides for the relinquishment by the State to riparian owners of certain stream beds crossed or partly crossed by original land grants and awards. The Act specifically provides it shall not "impair the rights of the general public and the State in the waters of streams. . . ." Attention is

also called to the fact that the Small Bill is not applicable to relinquish any number of acres of stream bed in excess of the number conveyed in the original grants. Jones v. Springer, 256 S.W.2d 1016, 1020-1 (Tex.Civ.App. 1952). The Act also reserves the State's rights to minerals and to sand and gravel in the beds of navigable streams.

In State v. Bradford, supra, at p. 1076, the court said:

"... It is quite plain that the Legislature in the enactment of the Small Bill did not intend to grant unto the patentees or awardees and their assignees an absolute title to the land described in their patents or awards under navigable waters. The provisions of the Small Bill recognize all those rights to which the beds of statutory navigable streams or water courses had been theretofore reserved under the public policy and laws of this State."

Clearly, under the Taylor Fishing Club case, supra if the undisputed and "absolute title" to the bed of the stream belonged to the riparian, the public would have no fishing rights therein. However, in view of the specific provision in the Small Bill that the Act shall not "impair the rights of the general public and the State in the waters of streams...," in view of the language in the Bradford case, supra, that reservation of the waters of streams in the public implies "all things necessary to the practicable and substantial use of and enjoyment of the things reserved," and in view of the further holding in the Bradford case that a liberal construction of such reservation is required, we feel constrained to hold that the Small Bill left undisturbed such rights as the public theretofore had to walk for fishing purposes in the dry or submerged beds of streams. The Small Bill does not contain such "express and positive language" as will suffice to take away such rights from the public.

The portion of Article 1377 material to our inquiry is as follows:

"It shall be unlawful for any person to enter upon the inclosed land of another without consent of the owner, proprietor or agent

in charge thereof, and therein hunt with firearms or therein catch or take or attempt to catch or take any fish from any pond, lake, tank, or stream, or therein camp, or in any manner depredate upon the same. By 'inclosed lands' is meant such lands as are in use for agriculture or grazing purposes or for any other purpose, and inclosed by any structure for fencing either of wood or iron or combination thereof, or wood and wire, or partly by water or stream, canyon, brush, rock or rocks, bluffs, or island. . . ."

The above article prescribes a criminal penalty for a certain type of trespassing. Use of the bed of the stream would not be a trespass if the person has a right to use same as an incident to the right to fish. We are of the opinion that Article 1377 was not intended to apply to a situation where the entry was otherwise lawful, i.e., not a civil trespass.

As we interpret this Act, it converts into a crime an improper entry on private premises, upon "land of another without consent of the owner," Here the riparian is not such an "owner", as heretofore pointed out, of the bed of the stream as would give him the right to its exclusive use. Such penal statute, therefore, is not applicable. However, a member of the public would not have the right in going to and from a stream to cross over private land in which no public rights obtained under the civil or common law.

We answer your quoted question in the affirmative and hold that the conduct in question does not violate Article 1377.

## SUMMARY

The general public is authorized to walk down the dry or submerged bed of a river which is privately owned by virtue of the Small Bill (Article 5414a, V.C.S.)

for the purpose of seining and fishing in water holes in the bed of the river. This is true even though the river passes through land fenced in on both sides of the river, the owner maintaining water gaps across the river bed where the river enters and exits from his land. Such conduct by the public does not violate Article 1377, V.P.C.

Yours very truly,

JOHN BEN SHEPPERD
Attorney General

By J. Arthur Sandlin
J. Arthur Sandlin
Assistant

APPROVED:

Mary K. Wall
Reviewer

Burnell Waldrep
Reviewer

W. V. Geppert
Reviewer

L. W. Gray
Special Reviewer

Davis Grant
First Assistant

John Ben Shepperd
Attorney General

JAS:bt